UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROSE MARY NICKERSON,

                                    Plaintiff,

         -v.-                                    5:04-CV-00875
                                                 (NPM)

COMMUNICATION WORKERS OF
AMERICA LOCAL 1171 and JOHN S.
HANSON, in his capacity as Union
President, and Individually,

                                    Defendants.

APPEARANCES:                        OF COUNSEL:

O'HARA & O'CONNELL                  STEPHEN CIOTOLI, ESQ.
Attorneys for Plaintiff
200 Salina Meadows Parkway
Suite 100
Syracuse, New York 13212

CREIGHTON, PEARCE, JOHNSEN
 & GIROUX                           JONATHAN JOHNSEN,ESQ.
Attorneys for Defendants
560 Ellicott Square Building
295 Main Street
Buffalo, New York 14203


NEAL P. MCCURN, Senior District Judge


## MEMORANDUM-DECISION and ORDER

1

## I.    Procedural Background

Plaintiff, Rose Mary Nickerson ("Nickerson") originally filed this action in
New York State Supreme Court for the County of Onondaga seeking monetary
damages relating to lost vacation pay allegedly due her from defendants,
Communication Workers of America Local 1171 ("the Union") and John S.
Hanson, in his capacity as president of the Union and individually ("Hanson")
(collectively, "Defendants").  In her initial complaint, Nickerson alleged the
following three state law causes of action against the Defendants: violations of the
New York Labor Law, common law breach of contract, and "wrongful denial and
withholding of employment benefits[.]" Compl. ¶¶ 34-55, Dkt. No. 1.  On July 23,
2004, Defendants removed the action to this court on the ground that the Railway
Labor Act, 45 U.S.C. § 184, gives federal courts exclusive jurisdiction of claims
for the breach of a collective bargaining agreement in the airline industry.  See
Notice of Removal ¶ 7, Dkt. No. 1.

Three days after removal, Defendants filed a motion to dismiss for failure to
state a claim upon which relief may be granted pursuant to Fed. R. Civ. P.
12(b)(6).  On August 11, 2004, Nickerson filed a motion to remove the action to
State court pursuant to 28 U.S.C. § 1447(c).  Oral argument was heard regarding
those motions, after which the court allowed Nickerson to amend her complaint.
The Amended Complaint alleges the following six causes of action:  Count I is a
claim for violations of New York Labor Law § 190 et seq., Count II is a claim for
common law breach of contract, Count III is a claim for "wrongful denial and
withholding of employment benefits - retaliation against Plaintiff," Count IV is a
claim for defamation and libel, Count V is a claim for abuse of process, and Count

2

VI is a claim for violation of the Labor Management Reporting and Disclosure Act ("LMRDA"). After Nickerson filed the Amended Complaint, the parties agreed to and did withdraw their respective motions regarding the initial complaint, with the understanding that Defendants' motion to dismiss claims in the Amended Complaint was forthcoming. Presently before the court is said motion, wherein Defendants seek dismissal of all claims except for Count II of the Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). It should be noted that, at the conclusion of oral argument regarding the present motion, both parties conceded that even if the court grants same, it nonetheless retains jurisdiction over the remaining state law breach of contract claim in Count II of the Amended Complaint, as resolution of same requires interpretation of a collective bargaining agreement, and thus is preempted by the Railway Labor Act. See 45 U.S.C. § 184 (2004); Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 114 S.Ct. 2239 (1994).

## II.    Factual Background

The following facts are set forth by Nickerson in the Amended Complaint as well as the exhibits thereto, and must be accepted as true by the court for purposes of deciding the present motion.

Nickerson began work for US Airways, Inc. ("US Air") in June 1969 at the Reservation Center in MONY Plaza, Syracuse, and thereafter continued her employment with US Air at the Airport Boulevard location in North Syracuse. At all relevant times, Nickerson remained an employee of US Air and a member of the Union. In or about 1998, the Union was formed and Nickerson became a member. The Union, as the exclusive representative of US Air employees, engaged in contract negotiations with US Air for the development and creation of

3

a collective bargaining agreement ("CBA") between US Air and its Passenger Service employees, of which Nickerson was, a member.

In May 2000 Nickerson became the Union president, and pursuant to Article 17 of the CBA, took a leave of absence from her direct employment with US Air. Nonetheless, during her tenure as Union president, Nickerson remained a US Air employee, subject to the terms of the CBA and the Union Bylaws. Also while serving as Union president, US Air continued Nickerson's seniority, employee benefits and travel privileges in accordance with the CBA and Union Bylaws. In addition, Nickerson was entitled to return to her job at US Air upon discontinuance of her service with the Union.

In December 2002, Nickerson's tenure as Union president ended. At that time, she sought to return to her position at the Reservation Center in North Syracuse. However, because US Air was closing that facility, it furloughed all of its employees at that location, including Nickerson. According to a letter Nickerson received from US Air, which was dated February 3, 2003, her furlough became effective January 17, 2003.

Nickerson thereafter sought compensation from the Union for payment of her unused vacation days. According to Article X Section 1 of the Union Bylaws, the local Union president shall suffer no loss of pay or benefits. Ostensibly due to this provision in the Bylaws, Nickerson claims she is owed 27 days (216 hours) of vacation time. However, Nickerson's requests that the Union compensate her for this time were refused. On March 12, 2003 Nickerson issued a letter to the new Union president, Defendant Hanson, and thereafter placed two telephone calls to him for the purpose of requesting payment for her unused vacation days. On March 28, 2003, Hanson responded to Nickerson's request by letter, indicating

4

that the "national union" was going to conduct an audit of her unused vacation time. Another letter demanding payment was issued to Hanson by Nickerson on December 30, 2003, which was thereafter forwarded by Hanson to counsel for the "National union".   After an initial investigation, counsel for the "National union" directed the matter back to Hanson in March 2004.   However, since that time, despite letters and telephone calls to Hanson by her attorneys, Nickerson has not received any communication from Hanson.  Moreover, there is no internal dispute mechanism available for Nickerson to seek resolution of her claims for compensation of her unused vacation days.

In December 2002, a union trial was held in which Nickerson was the named respondent to four charges by complainant, Kathleen Striffler ("Striffler"). Said charges were as follows: (1) failure to schedule regular executive council meetings, (2) adjustment of a member's time cards without his knowledge, (3) misappropriation of  money or property belonging to the union local and failure to provide receipts for purchases made on behalf of the union local, and (4) offenses which tend to bring the union local into disrepute.  The trial was held before a five-member panel, including the Chairperson of the panel.  Each party to the dispute was represented by counsel and witnesses were sworn and testified. Nickerson was found "not guilty" and was exonerated on all charges.

According to Nickerson, the aforementioned union trial and subsequent refusal by the Union to compensate her for unused vacation time are retaliatory actions taken against her by Striffler and the Union due to Nickerson's refusal to misrepresent facts to the New York State Department of Labor ("DOL") and the Unemployment Insurance Appeal Board ("UIB") so that Striffler, a former Union employee, could receive unemployment benefits.

5

## III.   Discussion

### A.   Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004), quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). When reviewing a 12(b)(6) motion, this court must accept the allegations of fact in plaintiff's complaint as true, drawing all reasonable inferences in his favor. See Freedom Holdings, 357 F.3d at 216, citing Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). The court will consider, in addition to allegations of fact set forth in the complaint, any exhibits attached thereto or documents it incorporates by reference, see Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217(2d Cir. 2004), or "documents that the plaintiff[] either possessed or knew about and upon which [he] relied in bringing the suit," Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).

### B.   Count I - New York Labor Law § 190 et seq.

Count I of the Amended Complaint sets forth allegations in support of a cause of action against Defendants for violation of Article 6 of the New York Labor Law, specifically, section 198-c. See Am. Compl. ¶¶ 33-43. See also N.Y. Lab. Law § 198-c (McKinney 2004). Nickerson alleges that Defendants willfully failed to compensate her for unused vacation pay in accordance with the terms of the 1999 CBA and the Union Bylaws, in violation of section 198-c. See Am. Compl. ¶¶ 37-40.

New York Labor Law § 198-c provides that, among other things, (1) an

employer who fails to pay benefits to employees in accordance with an agreement to that effect is guilty of a misdemeanor, (2) "benefits" include vacation pay, and (3) executives earning in excess of $600 per week are not persons covered by the section. See § 198-c. Defendants argue that this claim should be dismissed because § 198-c does not provide for a civil cause of action, and because Nickerson is not protected by the statute as she was an executive earning in excess of $600 per week.

Defendants are correct in their argument that an executive earning more than $600 per week falls within a limitation to the protections of § 198-c. See N.Y. Lab. Law § 198-c. See also Edwards v. Schrader-Bridgeport International, Inc., 205 F.Supp.2d 3, 15 (N.D.N.Y. 2002). Nickerson, in weak opposition, cites caselaw which holds that the limitation does not apply in claims brought under some sections of Article 6, to wit §§ 193 and 194, see Maggione v. Bero Construction Corp., 106 Misc.2d 384, 386, 431 N.Y.S.2d 943 (Sup. Ct. 1980), and therefore, she argues, because the limitation does not apply to all of Article 6, it does not apply to § 198-c. Nonetheless, Defendants fail to identify any allegation in the Amended Complaint, or an exhibit thereto, that Nickerson earned in excess of $600 per week. To be sure, Defendant Hanson has submitted an affidavit wherein he alleges that, in accordance with the CBA, which is incorporated by reference into the Complaint, Nickerson received $24 per hour for a forty hour work week while employed as Union president. See Aff. of John Hanson, July 26, 2004 at ¶ 4, Dkt. No. 21. However, the language of the CBA is devoid of any reference to Nickerson's salary amount.

In any event, Defendants argue as an alternative basis for dismissal, that § 198-c does not provide for a civil cause of action. Initially, the court notes

7

Nickerson's complete lack of opposition to this alleged ground for dismissal.
Although a plaintiff's failure to oppose an argument in favor of dismissal does not
result in a finding of default on a Rule 12(b)(6) motion, see Sherlock v. Wal-Mart
Store #2156, No. 04-CV-1180, 2005 WL 1027532, at *1 (E.D.N.Y. May 2, 2005),
bald conclusions of law, without supporting legal authority, do not satisfy even the
liberal notice pleading standard of Rule 8, and will not survive a motion to
dismiss, see Vossler v. Phasecom America, Inc., No. 04-CV-128S, 2004 WL
1628903, at *1 (W.D.N.Y. July 19, 2004).  In their moving papers, Defendants
provide legal authority in support of their contention that § 198-c does not allow a
civil remedy for its violation.  See Hammell v. Banque Paribas, 780 F.Supp. 196,
200 (S.D.N.Y. 1991), citing Stoganovic v. Dinolfo, 92 A.D.2d 729, 461 N.Y.S.2d
121, 123 (App. Div. 1983), aff'd, 61 N.Y.2d 812, 473 N.Y.S.2d 972 (1984).  The
court in Hammel dismissed the plaintiff's § 198-c claim, relying on a New York
Court of Appeals order affirming the rule of law that said statute does not allow a
civil cause of action.  See id.  Therefore, Nickerson's claim in Count I of the
Amended Complaint, for a violation New York Labor Law § 198-c must be
dismissed for failure to state a claim upon which relief may be granted pursuant to
Rule 12(b)(6).

### C.   Tort Liability - Counts III, IV and V

Defendants argue that the tort claims against the Union and against Hanson
in his capacity as Union president, which are set forth in Counts III,[1] IV, and V of

---

[1] In Count III of the Amended Complaint, Nickerson purports to set forth a tort claim for
"wrongful denial and withholding of employment benefits - retaliation against plaintiff" wherein
she alleges that the Defendants have failed to compensate her for her unused vacation pay in
retaliation for, among other things, Nickerson's refusal to misrepresent facts to the DOL and UIB
on behalf of Striffler.  See Am. Compl. ¶¶ 51-59.  However, as will be addressed hereinafter,
Nickerson's actual claim under Count III is that Defendants breached the covenant of good faith

the Amended Complaint, should be dismissed. It is the law in New York that a voluntary, unincorporated membership association, such as the Union here, cannot be sued for the torts of its members unless a plaintiff alleges and proves the liability of every single member of said association. See Martin v. Curran, 303 N.Y. 276, 280-282 (N.Y. 1951). See also N.Y. Gen. Ass'ns Law § 13 (McKinney 2004). Although, as Nickerson points out, this law is criticized, Defendants correctly note that it is nonetheless valid law in New York and as such, continues to be followed. See Roth v. United Federation of Teachers, 5 Misc.3d 888, 895-896, 787 N.Y.S.2d 603 (Sup. Ct. 2004); Bldg. Indus. Fund v. Local Union No. 3, IBEW, 992 F.Supp. 192, 194 (E.D.N.Y. 1996).

Defendants also seek dismissal of Counts III, IV and V of the Amended Complaint as against Hanson in his individual capacity, because, they allege, Nickerson has failed to plead facts which would support claim that Hanson acted outside of his role as Union president. Although Defendants fail to cite any authority in support of their argument, it is the law in New York that a union official, such as Hanson, can be held personally liable for torts committed in his or her individual capacity, but not for the torts of the union or its members simply by virtue of being an officer of said union. See, e.g., A. Terzi Prod., Inc. v. Theatrical Protective Union, 2 F.Supp.2d 485, 495 (S.D.N.Y. 1998).

However, because alternative grounds exist for dismissal of Counts III, IV and V of the Amended Complaint, the court need not address either of the aforementioned arguments.

### 1.    Count III - Wrongful Denial and Withholding of

---

and fair dealing. To the extent she can state a claim for punitive damages for an underlying tort related to said breach, Count III may also be interpreted as a tort claim.

**Employment Benefits - Retaliation Against Plaintiff**

Nickerson's third cause of action is entitled "wrongful denial and withholding of employment benefits - retaliation against plaintiff." As set forth in the Amended Complaint,

> "[d]espite numerous communications between the parties regarding the payment of such benefits, defendants have failed to pay the sum due and owing to plaintiff for her unpaid vacation pay. Plaintiff alleges that Defendants, and each of them, have wrongfully failed and refused to pay Plaintiff's vacation pay for some ulterior motive, and in retaliation against plaintiff, arising from her tenure as the Local President and that the withholding of plaintiff's vacation pay is being done based on some wrongful, malicious reason, which gives rise to other and further damages, including punitive damages."

Am. Compl. ¶ 54. Nickerson further alleges that the motive behind Defendants' failure to pay her vacation benefits is retaliation for her refusal to misrepresent facts to the DOL and UIB on behalf of former Union employee, Striffler. See Am. Compl. ¶ 58. Nickerson also alleges facts surrounding the Union "trial" against her involving Striffler, ostensibly for further support of her claim of retaliation. See Am. Compl. ¶¶ 55-57.

Although Nickerson qualifies this cause of action as one in tort, in her opposition papers, she clarifies that her claim here is for a breach of the covenant of good faith and fair dealing. However, Nickerson argues that she is still due punitive damages on this claim because, as in insurance law, where there is no dispute as to coverage, and where defendants have acted in bad faith with "an extraordinary showing of a 'disingenuous or dishonest failure to carry out a contract[]'" punitive damages may be awarded. See Pl's Mem of Law in Opp'n, citing Gordon v. Nationwide Mutual Insurance Co., 30 N.Y.2d 427, 438, 334 N.Y.S.2d 601 (1972); Monroe v. Providence Washington Insurance Co., 126

10

A.D.2d 929, 930, 511 N.Y.S.2d 449 (App. Div. 1987).

Defendants note that a covenant of good faith and fair dealing does not impose any obligation beyond the contract, see Defs.' Reply Mem. of Law, citing Silvester v. Time Warner, Inc., 1 Misc.3d 250, 763 N.Y.S.2d 912 (Sup. Ct. 2003), and punitive damages on such a claim are only payable when a separate tort is committed which requires allegations that a party engaged in separate conduct outside the contract intending to defeat same, see id., citing Logan v. Empire Blue Cross and Blue Shield, 275 A.D.2d 187, 194, 714 N.Y.S.2d 119 (App. Div. 2000); New York University v. Continental Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 288 (1995).

It is true that every contract contains an implied covenant of good faith and fair dealing. See Silvester, 1 Misc.3d at 258. However, it is also true that "the use of familiar tort language to support a claim for breach of the implied covenant of good faith and fair dealing does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages." Drepaul v. Allstate Ins. Co., 299 A.D.2d 391, 749 N.Y.S.2d 439, 441(App. Div. 2002). While Nickerson may contend that this cause of action is based in contract, not tort law, because she is demanding punitive damages, she must allege facts sufficient to establish an underlying tort claim. Because, as will be discussed shortly, Nickerson cannot state a claim for either defamation or abuse of process, the only torts alleged in the Amended Complaint, her claim for punitive damages under a breach of the covenant of good faith and fair dealing theory, must also fail. As such, Defendants' motion to dismiss Count III of the Amended Complaint is likewise granted.

### 2.   Count IV - Defamation and Libel

11

Defendants seek dismissal of Nickerson's claim for defamation and libel, set forth in Count IV of the Amended Complaint, on the grounds that it is not timely in accordance with the statute of limitations set forth in N.Y. C.P.L.R. § 215(3), and alternatively, because it fails to plead a claim for defamation in accordance with C.P.L.R. § 3016(a).

Initially, it should be noted that while this court must apply New York's statute of limitations to Nickerson's defamation claim, such is not the case for the pleading requirements set forth in C.P.L.R. § 3016(a). "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." Com/Tech Communication Techs., Inc. v. Wireless Data Sys., Inc., 163 F.3d 149, 150 (2d Cir. 1998), quoting Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). See also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938). The principles of Erie and its progeny apply equally whether the court is exercising diversity or pendent jurisdiction. See Gravatt v. City of New York, 54 F.Supp.2d 233, 233-234 (S.D.N.Y. 1999). Therefore, while this court must apply the substantive law of New York to Nickerson's defamation claim, including the relevant statute of limitations set forth in C.P.L.R. § 215(3), see Investigative Group, Inc. v. Brooke Group Ltd., No. 95-Civ.-3919, 1997 WL 727484, at *3 (S.D.N.Y. Nov. 21, 1997), the pleading requirements for such a claim, set forth in C.P.L.R. § 3016(a), do not apply, see Sabatowski v. Fisher Price Toys, 763 F.Supp. 705, 713 (W.D.N.Y. 1991), citing Erie, 304 U.S. 64, 58 S.Ct. 817; Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986); Geisler v. Petrocelli, 616 F.2d 636, 640 (2d Cir. 1980). Instead, the allegations in the Amended Complaint regarding Nickerson's claim for defamation need only comply with the liberal pleading requirements set forth in

12

Fed. R. Civ. P. 8. Id.

In order to state a claim for defamation under New York law, a plaintiff must allege facts which, if proved, would show "(1) a defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on face of statement)." Campbell v. Kane, Kessler, P.C., No. 02-Civ.-1680, 2004 WL 1234048, at *6 (S.D.N.Y. June 2, 2004). When deciding whether a complaint which purports to allege a claim of defamation complies with Rule 8, courts have considered whether said complaint references the alleged defamatory statement, identifies who made the statement, when it was made, the context in which it was made, whether it was made orally or in writing and whether it was made to a third party. See Sabatowski, 763 F.Supp. at 714, citing Wanamaker v. Columbian Rope Co., 713 F.Supp. 533 (N.D.N.Y. 1989).

Pursuant to C.P.L.R. § 215(3), an action to recover damages for, among other things, libel, such as the claim alleged here in Count IV of the Amended Complaint, must be commenced within one year. Because, Defendants argue, the alleged defamatory statements were made at a union trial which occurred on December 11, 2002, and because this action was commenced more than a year after that date, Nickerson's claim for defamation and libel must be dismissed.

In her Amended Complaint, Nickerson alleges that "Defendants, and each of them, have made false and injurious statements of facts concerning plaintiff . . . including the statements made at that union 'trial' that was brought against plaintiff . . . in which the union attempted to show that plaintiff '*repeatedly abused her authority as president of the local and how she intentionally and maliciously*

13

*went out of her way to do what was not in the best interests of those who put her in office.*'" Am. Compl. ¶ 61 (emphasis added). The quoted language is actually a statement made by Striffler's attorney in her opening statement to the panel at Nickerson's union trial, held on December 11, 2002, a transcript of which is attached to the Amended Complaint as Exhibit C. See Ex. C to Am. Compl., 12:12-15. Nickerson further sets forth the allegation that "Defendants, and each of them, continued to make such false and injurious statements . . . ." Am. Compl. ¶ 63.

In her opposition papers, and again at oral argument, Nickerson contends that while the original publication of the defamatory statement was made outside of the statute of limitations, the statement has been republished several times since then, to wit, by Hanson to deny her claims for vacation pay, by Hanson and the Union in a claim for misappropriation made to its surety bond carrier, and in a letter by Hanson to the Union membership. However, these allegations are absent from the Amended Complaint, with the exception of the allegation that "[Nickerson's] requests for payment . . . were refused by defendants, who instead, voiced allegations against her of improper practices in her performance as President, which allegations were, and are, unfounded and unsubstantiated, and offered only to retaliate against and defame [Nickerson] personally." Am. Compl. ¶ 22. Nickerson fails to allege even an approximate date of republication of the alleged defamatory statements. As such, Nickerson fails to state a claim for defamation and libel, and therefore, Defendants' motion to dismiss said claim is granted.

### 3.    Count V - Abuse of Process

Defendants next seek dismissal of Nickerson's claim for abuse of process,

14

set forth in Count V of the Amended Complaint, on the grounds that it is not timely in accordance with the statute of limitations set forth in N.Y. C.P.L.R. § 215(3), and alternatively, because it fails to plead a cause of action for abuse of process in accordance with New York law.

Courts have interpreted the one-year statute of limitations set forth in C.P.L.R. § 215(3) to apply to a claim for abuse of process. See Lucas v. Novogratz, No. 01-Civ.-5445, 2002 WL 31844913, at *6 (S.D.N.Y. Dec. 18, 2002). Such a cause of action accrues, and the statute of limitations begins to run, from the date of the institution of process. Here, Defendants argue, the "process" alleged was in the form of charges that were heard on December 11, 2002. Although Nickerson fails to plead the date those charges were filed against her, in Footnote 4 of her opposition memorandum, she mentions that they were filed in April 2002. See Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 32, n.4, Dkt. No. 27. Because this action was commenced more than one year after that date, or even the date of the trial, Defendants argue that Nickerson's claim for abuse of process must be dismissed.

Moreover, Defendants argue, Nickerson has failed to plead that any process has been issued, and to the extent the charged filed by Striffler are considered process, Nickerson fails to plead the proper motivation of Striffler in commencing process. Nickerson contends, without supporting authority, that the process here is continuing, beginning with the union trial and continuing with the election process, the audit process, a DOL investigation, and the surety bond carrier claim.

To state a claim for abuse of process, it is necessary that plaintiff plead the essential elements of the claim, one of which is that process, either civil or criminal, has issued. Courts define "process" as a "direction or demand that the

15

person to whom it is directed perform or refrain from the doing of some prescribed act." Julian J. Studley, Inc. v. Lefrak, 41 N.Y.2d 881, 393 N.Y.S.2d 980, 982 (1977). Moreover, in order to establish a claim for abuse of process, the process must have been issued by or filed in a court. See Glaser v. Kaplan, 170 N.Y.S.2d 522, 524-525 (App. Div. 1958). Here, to be sure, although Nickerson argues that the process at issue here includes the commencement of the union trial as well as the election process, the audit process, a DOL investigation, and the surety bond carrier claim, she only pleads facts regarding the union trial. In any event, none of the scenarios mentioned by Nickerson fall within the definition of "process" for the purpose of an abuse of process claim in New York. Moreover, at oral argument, Nickerson conceded that the commencement of the union trial is not the equivalent of process filed in a court. Therefore, Defendants' motion for dismissal of Count V of the Amended Complaint is granted.

**D.    Count VI - LMRDA**

Nickerson's final cause of action is for a violation of sections 101(a)(2), 101(a)(5) and 609 the Labor Management Reporting and Disclosure Act ("LMRDA"), codified at 29 U.S.C. §§ 411(a)(2), 411(a)(5) and 529, respectively. Defendants argue that Nickerson may not bring this cause of action because she is not a member of the Union, she did not exhaust her available remedies within the Union, and because she has failed to state a claim under §§ 101(a)(2), 101(a)(5) or 609 of the LMRDA. Because the court finds that Nickerson has not stated a claim under the LMRDA, Defendants' membership and exhaustion arguments need not be addressed.

Section 101(a)(2) of the LMRDA protects a union member's rights of free speech and assembly, § 101(a)(5) requires that a union member be given notice

and a hearing prior to being disciplined, and § 609 protects a member from being disciplined for exercising any rights pursuant to Title I of the Act, which encompasses §§ 101(a)(2) and (5). See Maddalone v. Local 17, United Broth. of Carpenters, 152 F.3d 178, 183 (2d Cir. 1998). In order to state a claim cognizable under Title I, a plaintiff must plead "[a] direct infringement of membership rights or a real threat to the democratic integrity of the union[.]" Franza v. Intern. Nroth. of Teamsters, Local 671, 869 F.2d 41, 48 (2d Cir. 1989). Defendants argue that Nickerson failed to allege that she was prevented from exercising her speech or assembly rights, or that she was disciplined without notice and a hearing, and thus her claims pursuant to §§ 101(a)(2) and (5) must be dismissed. Moreover, Defendants contend that Nickerson fails to allege that she was disciplined for exercising her rights pursuant to either § 101(a)(2) or § 101(a)(5) and therefore her § 609 claim must also be dismissed.

In the Amended Complaint, Nickerson alleges that (1) she exercised her right to free speech by refusing to lie to the DOL and UIB on behalf of Striffler, see Am. Compl. ¶ 77, and that (2) she has been retaliated against and thus disciplined by the (a) bringing of charges and subsequent trial which resulted in her losing her re-election bid, see Am. Compl. ¶¶ 75-76, 78, and (b) the refusal by Defendants to pay her vacation benefits, see Am. Compl. ¶ 76. Section 101(a)(2) has been interpreted by the Second Circuit to "protect[] union members from direct interference with union membership rights in retaliation for their expression of opinions concerning union activities." Maddalone, 152 F.3d at 183, citing Cotter v. Owens, 753 F.2d 223, 228 (2d Cir. 1985). Here, Nickerson has failed to properly plead facts in support of a conclusion that her refusal to lie to the DOL and UIB on behalf of a Union member constitutes the expression of an opinion

17

regarding union activities.  Such action by Nickerson is clearly distinguishable from other actions which were deemed protected by § 101(a)(2), such as, for example, a public demonstration in protest of union layoffs.  See Maddalone, 152 F.3d at 182, 185.  For this reason, Nickerson cannot state a claim pursuant to § 101(a)(2).

In order to state a claim under either §§ 101(a)(5) or 609, a plaintiff must allege that he or she was subject to some discipline on behalf of the defendant union.  See id.  Here, Nickerson claims that the charges brought against her by Striffler and the subsequent union trial based on same constitute discipline pursuant to the LMRDA.  However, in order to be considered discipline under that act, there must have been some "punishment authorized by the union as a collective entity to enforce its rules."  Id., quoting Breininger v. Sheet Metal Workers Int's Ass'n Local Union No. 6, 493 U.S. 67, 91, 110 S.Ct. 424 (1989).  Here, Nickerson does not allege a collective action against her by the Union, but an action taken by one Union member, Striffler.  See Maddalone, 152 F.3d at 185.  Moreover, as Defendants correctly note, under § 609, discipline is "meant to refer only to punitive actions diminishing membership rights[,]" see Yerdon v. Teamsters Local 1149, 886 F.Supp. 226, 234 (N.D.N.Y. 1995) (citation omitted), aff'd, 91 F.3d 370 (2d Cir. 1996),  and therefore, where charges resulted in no decision at all, as in Yerdon, or, as here, total exoneration, no "discipline" has occurred.  Finally, as Defendants correctly argue, Nickerson's allegation that she was disciplined by the withholding of benefits does not state a claim under § 101 because, like the claims made by the plaintiff in Yerdon, also a union employee, that defendants union and union officials retaliated against her by, among other things, "refusing to sign her paychecks [and] altering her salary and vacation[,]"

they deal with her rights as a union employee, not a union member.  See id. at 232-233.  For these reasons, not only must Nickerson's § 101(a)(2) claim fail, she likewise cannot state a claim under either § 101(a)(5) or § 609.  Therefore, Defendants' motion to dismiss Count VI of the Amended Complaint is granted.

## IV.    Conclusion

The court concludes, after careful consideration of the papers submitted and the oral argument of both parties, that Plaintiff has failed to state a claim upon which relief may be granted as to Counts I, III, IV, V and VI of the Amended Complaint.   Accordingly, Defendants' motion to dismiss said claims pursuant to Fed. R. Civ. P. 12(b)(6) is hereby GRANTED.

The court retains jurisdiction of this action pursuant to 28 U.S.C. § 1331, as federal preemption applies to Plaintiff's breach of contract claim, set forth in Count II of the Amended Complaint.


IT IS SO ORDERED.


DATED:     May 31, 2005
           Syracuse, New York

Neal P. McCurn
Senior U.S. District Judge

19